**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NATIVIDAD MORALES,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO.  26-3921** |
| **MARKWAYNE MULLIN, _et al_.,** | |
| **Respondents.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                              **June 10, 2026**

On or about June 3, 2026, Petitioner Natividad Morales was detained by officers of

Immigration and Customs Enforcement ("ICE") pursuant to the government's new interpretation

of Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225.

Following his detention, Morales filed a petition for a writ of habeas corpus under 28 U.S.C. §

2241, arguing that his continued detention without a bond hearing rests upon an unlawful

application of 8 U.S.C. § 1225(b)(2) and denies him due process.[1] The Court agrees that Morales

is ineligible for mandatory detention under § 1225(b)(2) because of his longstanding presence in

the United States. Consistent with the reasoning of hundreds of prior rulings in this District,[2] this

Court will grant Morales's petition.

---

[1] Pet. [Doc. No. 1].

[2] _See, e.g., Demirel v. Fed. Det. Ctr. Phila._, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); _Cantu-Cortes v. O'Neill_, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)_; Kashranov v. Jamison_, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)_; Ndiaye v. Jamison_, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)_; Patel v. McShane_, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); _Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila._, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)_; Flores Obando v. Bondi_, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); _Yilmaz v. Warden of the Fed. Det. Ctr. Phila._, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); _Conde v. Jamison_, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); _Bhatia v. O'Neill_, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); _Anirudh v. McShane_, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); _Picon v. O'Neill_, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. _See, e.g._, _Kanaut v. Rose_, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan.

## I.    BACKGROUND

Morales is a native of Mexico who has lived in the United States for approximately twenty years.[3] He has not previously been subject to immigration enforcement; nor does he have criminal convictions that warrant mandatory detention under the INA.[4] Morales has endeavored to establish a meaningful family life in this country by raising and supporting his seven-year-old daughter, who is a United States citizen.[5]

On or about June 3, 2026, Morales was arrested by officers of ICE in Delaware and transported to Pennsylvania, where he is currently detained in the Philadelphia Federal Detention Center ("FDC").[6] He has not been provided with a bond hearing.[7] The government has also instituted removal proceedings against him.[8] Morales's detention results from Respondents' newfound interpretation of 8 U.S.C. § 1225(b)(2)(A), whereby they suggest that individuals who have been long-present in the United States without lawful status are "applicant[s] for admission" and thus subject to detention without a bond hearing.[9]

---

6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Akobirov v. Jamison*, No. 26-3919, 2026 WL 1669153 (E.D. Pa. June 9, 2026); *Lopez-Gutierrez v. Jamison*, No. 26-3828, 2026 WL 1649985 (E.D. Pa. June 8, 2026); and *Shcherbakov v. Jamison*, No. 26-3272, 2026 WL 1651492 (E.D. Pa. June 8, 2026).

[3] Pet. ¶ 64 [Doc. No. 1].

[4] *Id.* ¶¶ 64, 67.

[5] *Id.* ¶ 65; Pet., Ex. 1 [Doc. No. 1-4].

[6] Pet. ¶ 66 [Doc. No. 1].

[7] *See, e.g.*, *id.* at 17.

[8] *Id.* ¶ 66.

[9] *See id.* ¶¶ 6, 45-47, 51; Opp'n at 2, 4 [Doc. No. 4]; 8 U.S.C. § 1225(b)(2)(A).

On June 8, 2026, while detained in the Eastern District of Pennsylvania, Morales petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[10] Consistent with its established practice for recent cases involving individuals detained by ICE under 8 U.S.C. § 1225(b)(2)(A), this Court ordered Respondents to show cause why Morales's petition should not be granted.[11] It also scheduled a show cause hearing.[12] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[13]

## II. LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[14] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[15]

## III. DISCUSSION

The decisive issue is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2)(A) extends to noncitizens who, despite not being admitted or paroled, have established their presence in the United States.[16] As the government acknowledges, courts in this District have confronted this question repeatedly and exhaustively in the past months.[17]

---

[10] Pet. [Doc. No. 1].

[11] 6/8/26 Order [Doc. No. 3].

[12] *Id.*

[13] 6/10/26 Stipulation and Order [Doc. No. 6].

[14] 28 U.S.C. § 2241(c)(3).

[15] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

[16] Respondents do not contest whether this Court has jurisdiction to review Morales's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[17] Opp'n at 2 [Doc. No. 4].

Overwhelmingly, courts in this District have rejected Respondents' position and found that

§ 1225(b)(2)(A) does not cover noncitizens who are firmly established in the country.[18] Even so,

"[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case

at issue."[19]

8 U.S.C. § 1225(b)(2)(A) provides as follows:

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In urging this Court to depart from its interpretation of § 1225(b)(2)(A) in prior decisions,

Respondents rely on the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[20] and the Eighth

Circuit's decision in *Avila v. Bondi*.[21] In those cases, Respondents stress, the courts held that

"seeking admission" was not a separate requirement from the condition that the individual be an

"applicant for admission."[22]

However, the Court need not defer to, and indeed rejects, the reasoning of

*Buenrostro-Mendez* and *Avila*. The term "seeking admission," by its plain meaning, connotes

present, ongoing action.[23] "Because some affirmative, present action is required, this phrase

---

[18] *See supra* n.1.

[19] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[20] 166 F.4th 494 (5th Cir. 2026).

[21] 170 F.4th 1128 (8th Cir. 2026).

[22] Opp'n at 3, 6 [Doc. No. 4].

[23] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

cannot apply to all noncitizens already residing in the United States."[24] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[25] Respondents' reading would render the term "seeking admission" entirely superfluous.[26] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[27] As a result, the detention of noncitizens like Morales is governed not by § 1225 but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing before continued detention is permitted.[28]

Congress's amendment of § 1226 through the Laken Riley Act confirms this. There, Congress adopted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with certain kinds of crimes.[29] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detention without a bond hearing irrespective of such criminal matters. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen participates in criminal activity would

---

[24] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[25] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[26] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[27] *See id.* at *6 (noting that, since 1997, the Department of Homeland Security had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[28] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057, at *4 (E.D. Pa. Apr. 17, 2026) ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).

[29] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

likewise be superfluous on Respondents' reading.[30] These considerations only amplify following decisions in the Second, Sixth, and Eleventh Circuits that adopted the interpretation that Morales advances.[31]

In summary, Morales may be detained under the INA only if, pursuant to § 1226(a) and applicable regulations, he receives a bond hearing and the facts demonstrate that he poses a risk of flight or community endangerment.[32] Yet, Respondents do not allege facts suggesting that Morales is likely to flee or dangerous. Nor does the record portray such concerns. Morales has been in the United States for around twenty years and has entrenched ties to his community through his efforts to raise his seven-year-old daughter, who is a United States citizen.[33] Further, nothing suggests that he has failed to comply with the conditions of his removal proceedings. For these reasons, a bond hearing is unnecessary, and the Court will order Morales's immediate release.[34]

Because Morales's detention without a bond hearing violates the INA, the Court does not reach the merits of his due process claim.

---

[30] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

[31] *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).

[32] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[33] Pet. ¶¶ 64-65 [Doc. No. 1].

[34] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.' " (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).

**IV.    CONCLUSION**

For the foregoing reasons, Respondents lacked authority to mandatorily detain Morales without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The Court will grant his petition, issue a writ of habeas corpus, and order his immediate release. An appropriate order will follow.